UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

BOBBIE A. MAXWELL,

        Plaintiff,

v.

PAUL BAILEY et al.,

        Defendants.

_____/

Case No. 1:23-cv-439

Honorable Sally J. Berens

**OPINION**

This is a civil rights action brought by a county inmate under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 5). Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.7.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendant(s) is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is

fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) (stating that "[p]ursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way that they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]however, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint[2] indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Bailey and Obrian. The Court will also dismiss, for failure to state a claim, the following claims against Defendants Johnson and P.A. Mary: (1) Plaintiff's official capacity claims; (2) Plaintiff's Eighth Amendment claims; (3) Plaintiff's Fourteenth Amendment equal protection claim; and (4) Plaintiff's civil conspiracy claims. Plaintiff's Fourteenth Amendment due process claim against Defendant Johnson premised upon her refusal to adhere to Plaintiff's medical diet for his diabetic needs, as well as his Fourteenth Amendment due process claim against

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

[2] On May 15, 2023, Plaintiff filed what he calls an amended complaint, asking the Court "to amend the original filing . . . to add P.A. Mary to the [list of] Defendants." (ECF No. 6, PageID.22.) Plaintiff's amendment is not a complete amended complaint; instead, it is more akin to a supplement to Plaintiff's original complaint. The Court, therefore, deems the operative complaint to consist of Plaintiff's original complaint (ECF No. 1) and his amendment (ECF No. 6).

Defendant P.A. Mary premised upon her refusal to take action to ensure that Plaintiff received an adequate diet for his diabetic needs, remain in the case. The Court will also deny Plaintiff's motion to appoint counsel (ECF No. 4).

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated at the Berrien County Jail (BCJ) in St. Joseph, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Sheriff Paul Bailey, Jail Operations Lieutenant J. Obrian, Kitchen Supervisor Barbra Johnson, and P.A. Mary. (ECF No. 1, PageID.2; ECF No. 6, PageID.22.) Public records indicate that Plaintiff was booked into the BCJ on February 17, 2023, and is facing numerous pending criminal charges. *See* https://www.berriencounty.org/558/Inmate-Search (type "Maxwell" for "Last Name" and "Bobbie" for "First Name," select Search, then click on "View Details" for inmate Bobbie Archer Maxwell, Jr.) (last visited May 15, 2023).

Plaintiff alleges that when he was booked into the BCJ, he was a "stable Type 2 diabetic [with normal] glucose numbers." (ECF No. 1, PageID.3.) He avers that from March 20, 2023, until the present, his glucose numbers have been unstable "due to Plaintiff taking 3 high[-]powered diabetic medications." (*Id.*) Plaintiff started sending numerous kites to Defendant Johnson, "asking her to honor [Plaintiff's] low sodium, no orange/orange juice diet, and to provide enough food in [his] brown bag to sustain [him through] the 14 [to] 14 ½ hour gap" between the last meal of the day and breakfast. (*Id.*) Plaintiff indicates that he sent these kites because his sugar dropped on more than four occasions, and he experienced hypoglycemia at night. (*Id.*)

Plaintiff contends that, despite his kites, Defendant Johnson refused to honor his diet and continued to give Plaintiff bologna subs, Fritos corn chips, a box of raisins, and an orange. (*Id.*) Plaintiff avers that he is allergic to oranges and that he is "stuck eating raisins and bread (sub bun)."

4

(*Id.*) Plaintiff "followed the chain of command" and sent three grievances to Defendant Obrian. (*Id.*) In his grievances, Plaintiff told Defendant Obrian about his kites to Defendant Johnson and how Plaintiff had needed "to push the panic button because [his] sugar had dropped." (*Id.*) Plaintiff also spoke to Defendant Obrian about the situation, and Defendant Obrian told Plaintiff that he would speak to Defendant Johnson. (*Id.*)

Plaintiff alleges that after he spoke to Defendant Johnson, "all that has happened is that [his] 2 hot meals (breakfast and lunch) are now 'lighter' in portion size than the general population's." (*Id.*, PageID.3, 5.) Plaintiff also receives the "alleged diabetic snack," which, according to Defendant Johnson, consists of one tablespoon of peanut butter and two packs of saltine crackers (four crackers total). (*Id.*, PageID.5.) Plaintiff argues that it is "atrocious" that the snack is supposed to "hold" him from 9:00 p.m. until 7-7:30 a.m., given the "potency of the 3 diabetic medications [Plaintiff] take[s]." (*Id.*) He asserts that he suffers from nervous tension, weight loss, depression, and anxiety, because of the situation, and that his psychiatric medications have been increased as a result. (*Id.*) Plaintiff alleges that he "places his [livelihood] at risk daily to contract communicable diseases by eating other inmates['] scraps they don't want." (*Id.*) He suggests that Defendant Johnson has simply "refus[ed] to respect medical's dietary orders" for Plaintiff. (*Id.*)

In his amendment, Plaintiff contends that on May 9, 2023, he had a "confrontational argument" with Defendant Johnson "about appropriately getting adequate rations of food [and] stopping [Defendant Johnson] from giving [Plaintiff] 1 bologna sub and 1 bag of Fritos (high salt content)." (ECF No. 6, PageID.22.) Plaintiff claims that during this argument, "it came out that [Defendant] Obrian 'misled' Plaintiff by not telling [Plaintiff] to contact . . . [Defendant] P.A. Mary to amend her order for [a] 'low sodium' diet to include 1 ½ portions of food and a snack bag

5

instead of a snack of 1-2 [packs] of crackers and 1 tablespoon of peanut butter." (*Id.*, PageID.22–23.) Plaintiff alleges that when he spoke to Defendant P.A. Mary "about it in totality, she told [Plaintiff] it's not her decision and told Plaintiff to 'stick it out, that [he] shouldn't be here much longer.'" (*Id.*, PageID.23.) Plaintiff avers that this "humiliated" him, giving him "grounds to add P.A. Mary as a defendant." (*Id.*)

Plaintiff contends that the BCJ is "a revolving door of violations and misconducts done by staff, as so many people 'come and go' and accept their 'temporary' neglect." (ECF No. 1, PageID.5.) According to Plaintiff, Defendant Bailey "isn't ever made aware because issues don't even reach his desk." (*Id.*) He contends that all Defendants are "equally guilty of violating, undermining[,] and disrespecting Plaintiff's human rights as well as [his rights under the Eighth] Amendment." (*Id.*) Plaintiff also contends that Defendants have violated his Fourteenth Amendment equal protection rights. (*Id.*, PageID.6.) Plaintiff also suggests that Defendants "conspired to mislead the true 'chain of command' to keep Plaintiff from receiving substantial food [and] diabetic snack[s]." (ECF No. 6, PageID.23.) He asks that Defendants be held accountable "in their official capacity respectfully." (ECF No. 1, PageID.6.)

As relief, Plaintiff seeks to have Defendants brought before the Board of Accountability so that they can be "reprimanded and dis[c]iplined accordingly." (*Id.*, PageID.7.) He also asks that an "investigation take place for other instances of malicious violations of [cruel] and unusual punishment." (*Id.*, PageID.7–8.) Plaintiff also seeks injunctive relief in the form of an order directing Defendants to provide him "a substantial diabetic meal for all 3 meals." (*Id.*, PageID.8.) Finally, Plaintiff seeks $50,000.00 in compensatory damages and $1 million in punitive damages. (*Id.*)

## II. Motion to Appoint Counsel

As noted above, Plaintiff has filed a motion to appoint counsel to represent him in this matter. (ECF No. 4.) Plaintiff avers that counsel should be appointed because he "lacks proper knowledge of the steps and/or procedures and requires help to continue appropriately." (*Id.*, PageID.16.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's motion to appoint counsel (ECF No. 4) will, therefore, be denied.

## III. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that

7

is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Official Capacity Claims

Plaintiff references that he would like to hold all Defendants "accountable in their official capacity respectfully." (ECF No. 1, PageID.6.) Official capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978)). An official capacity suit is to be treated as a suit against the entity itself. *Id.* at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)); *see also Matthews v. Jones*, 35

F.3d 1046, 1049 (6th Cir. 1994). "Individuals sued in their official capacities stand in the shoes of the entity they represent," and the suit is not against the official personally. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003); *see also Graham*, 473 U.S. at 165–66.

Here, because Defendants represent Berrien County, Plaintiff's suit against them in their official capacities necessarily intends to impose liability on the county. Berrien County, however, may not be held vicariously liable for the actions of its employees under Section 1983. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011); *City of Canton v. Harris*, 489 U.S. 378, 392 (1989); *Monell*, 436 U.S. at 694. Instead, a county is liable only when its official policy or custom causes the injury. *Connick*, 563 U.S. at 60. This policy or custom must be the moving force behind the alleged constitutional injury, and the plaintiff must identify the policy or custom, connect it to the governmental entity, and show that his injury was incurred because of the policy or custom. *See Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire*, 330 F.3d at 815 (6th Cir. 2003). "Governmental entities cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged violation of constitutional rights." *Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002) (citing *Monell*, 436 U.S. at 692).

A policy includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the sheriff's department. *See Monell*, 436 U.S. at 690. Moreover, the Sixth Circuit has explained that a custom "for purposes of *Monell* liability must 'be so permanent and well settled as to constitute a custom or usage with the force of law.'" *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996). "In short, a 'custom' is a 'legal institution' not memorialized by written law." *Id.* at 508. Here, Plaintiff's complaint has not alleged facts supporting a claim that his constitutional injury was the result of an official policy or custom employed by Berrien County. The Court, therefore, will dismiss Plaintiff's official capacity claims against Defendants.

### B.     Individual Capacity Claims

Although Plaintiff referenced that he would like to hold Defendants liable in their official capacities, he included that reference in the body of his complaint, not in the section of the Court's form complaint asking plaintiffs to explicitly state in what capacity they are suing the named defendants. The Court, therefore, liberally construes Plaintiff's complaint to assert individual capacity claims against all Defendants.

#### 1.     Claims against Defendants Bailey and Obrian

Plaintiff contends that he submitted three grievances to Defendant Obrian regarding Plaintiff's dietary concerns, and that he also spoke to Defendant Obrian about the issue. (ECF No. 1, PageID.3.) Defendant Obrian told Plaintiff that he would speak to Defendant Johnson about Plaintiff's dietary concerns. (*Id.*) With respect to Defendant Bailey, Plaintiff alleges only that Defendant Bailey "isn't ever made aware because issues don't even reach his desk." (*Id.*, PageID.5.)

Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300

(6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff fails to allege any facts suggesting that Defendants Bailey and Obrian encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in that conduct. Plaintiff avers that Defendant Bailey was not aware of the issue because complaints never reach his desk. Plaintiff also alleges that Defendant Obrian indicated that he would try to help Plaintiff by speaking to Defendant Johnson, and that Defendant Obrian "misled" Plaintiff by telling him not to contact Defendant P.A. Mary about the issue. Nothing in Plaintiff's complaint, however, permits the Court to infer that Defendant Obrian's alleged "misleading" of Plaintiff rises to the level of condoning any conduct by Defendant Johnson. Plaintiff's conclusory allegations are insufficient to demonstrate that Defendants Bailey and Obrian were personally involved in the events described in Plaintiff's complaint. Conclusory allegations of

11

unconstitutional conduct without specific factual allegations fail to state a claim under Section 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

Furthermore, to the extent Plaintiff suggests that Defendant Obrian violated his rights in any way by his handling of Plaintiff's grievances and complaints, including the way he allegedly "misled" Plaintiff by telling him not to speak to Defendant P.A. Mary about his concerns, the Court notes that Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant Obrian's conduct did not deprive him of due process.

Moreover, Plaintiff's First Amendment right to petition the government was not violated by Defendant Obrian's handling of Plaintiff's grievances and complaints. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minnesota State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

12

Finally, Defendant Obrian's actions (or inactions) have not barred Plaintiff from seeking a remedy for his complaints. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

In light of the foregoing, Plaintiff has failed to state a cognizable constitutional claim against Defendants Bailey and Obrian, and his claims against them will be dismissed.

### 2. Claims Against Defendants Johnson and P.A. Mary

#### a. Due Process

Plaintiff contends that Defendant Johnson has violated his Eighth Amendment rights by refusing to follow "medical's [dietary] orders" and provide a diet that is sufficient for Plaintiff's diabetic needs. Plaintiff also suggests that Defendant P.A. Mary violated his Eighth Amendment rights by telling Plaintiff that his diet was "not her decision" and by telling him that he should "stick it out" because he would not be at BCJ much longer. (ECF No. 6, PageID.23.)

"The Supreme Court has long recognized that the government has a constitutional obligation to provide medical care to those whom it detains." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Rhinehart v. Scutt*, 894 F.3d 721, 736–37 (6th Cir. 2018); *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). Both "[t]he Eighth and Fourteenth Amendments are violated 'when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety.'" *Id.* (citations omitted). The application of the proper constitutional right depends on the nature of Plaintiff's detention: the Eighth Amendment applies to convicted prisoners and the Fourteenth Amendment applies to pretrial detainees. *Id.* (citations omitted). As noted above, Plaintiff is a pretrial detainee. Plaintiff's claims against Defendants Johnson and P.A. Mary, therefore, are properly governed by the Fourteenth Amendment, and the Court will dismiss any Eighth Amendment claims.

Until recently, the Sixth Circuit "analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric.'" *Greene v. Crawford Cnty.*, 22 F.4th 593, 605 (6th Cir. 2022) (quoting *Brawner v. Scott Cnty.*, 14 F.4th 585, 591 (6th Cir. 2021)). However, in *Kingsley v. Hendrickson*, the Supreme Court differentiated the standard for excessive

14

force claims brought by pretrial detainees under the Fourteenth Amendment's Due Process Clause from those brought by convicted prisoners under the Eighth Amendment. *Kingsley*, 576 U.S. at 392–93. *Kingsley* left unanswered the question of "whether an objective standard applies in other Fourteenth Amendment pretrial-detainment context[s]." *Brawner*, 14 F.4th at 592.

Subsequently, in *Brawner*, the Sixth Circuit modified the second prong of the deliberate indifference test applied to pretrial detainees to require only recklessness. *Id.* at 592, 596. At issue in *Brawner* was a pretrial detainee's claim for deliberate indifference to medical needs. The Sixth Circuit held that to demonstrate deliberate indifference, "[a] pretrial detainee must prove 'more than negligence but less than subjective intent—something akin to reckless disregard.'" *Id.* at 596-97 (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)); *see also Helphenstine v. Lewis Cnty., Ky.*, 60 F.4th 305, 316–17 (6th Cir. 2023) (affirming that *Kingsley*, as interpreted by *Brawner*, required courts to "lower the subjective component from actual knowledge to recklessness"). A pretrial detainee must prove that the defendant acted "deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Brawner*, 14 F.4th at 596 (citation and quotation marks omitted).

*Brawner*, however, "left the [objective] prong untouched." *Hyman v. Lewis*, 27 F.4th 1233, 1237 (6th Cir. 2022). Under that prong, therefore, Plaintiff must allege that he has a sufficiently serious medical need. *See Helphenstine*, 60 F.4th at 317. Here, Plaintiff's diabetes certainly qualifies as a serious medical need. *See Garretson v. City of Madison Heights*, 407 F.3d 789, 797 (6th Cir. 2005). Plaintiff, therefore, has sufficiently alleged facts to meet the objective prong of a Fourteenth Amendment due process claim.

With respect to the subjective prong, Plaintiff must allege that Defendants Johnson and P.A. Mary acted "deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Brawner*, 14 F.4th at 596 (citation and quotation marks omitted). Here, Plaintiff alleges that Defendant Johnson continuously refused to "respect medical's dietary orders" regarding Plaintiff's diabetic diet. (ECF No. 1, PageID.5.) Plaintiff alleges that he sent numerous kites to Defendant Johnson "asking her to honor [his] low sodium, no orange/orange juice diet," and to also provide enough food in Plaintiff's "brown bag" meal to sustain him through the long gap of time between the last meal of day and breakfast the next morning. (*Id.*, PageID.3.) Plaintiff alleges that despite these kites, he continues to receive foods that he cannot eat, and is "stuck eating raisins and bread." (*Id.*) Plaintiff also contends that he eats other inmates' "scraps" that they don't want. (*Id.*, PageID.5.) Plaintiff alleges that he has experienced hypoglycemia, or low blood sugar, at night on more than four occasions. (*Id.*, PageID.3.)

Moreover, Plaintiff asserts that he had a "confrontational argument" with Defendant Johnson about his diet on May 9, 2023. (ECF No. 6, PageID.22.) He alleges further that he spoke to Defendant P.A. Mary about his dietary issue "in totality," and that Defendant P.A. Mary told Plaintiff that it was "not her decision" and that Plaintiff should just "stick it out, that [he] shouldn't be [in the BCJ] much longer." (*Id.*, PageID.23.) Although Plaintiff has not proven that Defendants Johnson and P.A. Mary acted deliberately and recklessly to a high risk of harm, taking the facts in the light most favorable to Plaintiff, the Court concludes that Plaintiff has sufficiently set forth a Fourteenth Amendment due process claim against Defendant Johnson premised upon her refusal to adhere to Plaintiff's medical diet for his diabetic needs, as well as a Fourteenth Amendment due

process claim against Defendant P.A. Mary premised upon her refusal to take action to ensure that Plaintiff received an adequate diet for his diabetic needs.

### b. Equal Protection

Plaintiff also references violations of his Fourteenth Amendment equal protection rights, asserting that he is "worthy to have under the law a sufficient diabetic diet." (ECF No. 1, PageID.6.) The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const. amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Massachusetts Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Here, Plaintiff's complaint is devoid of any allegations from which the Court could infer that Plaintiff is a member of a protected class.

Moreover, to the extent that Plaintiff intended to assert an equal protection claim in a class-of-one case, he fails to state such a claim. "[T]he hallmark of [a 'class-of-one'] claim is not the allegation that *one individual* was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class." *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) (alterations in original) (citations omitted); *see Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008) ("The 'class of one' theory . . . is unusual because the plaintiff in a 'class of one' case does not allege that the defendants discriminate against a *group* with whom she shares characteristics, but rather that the defendants simply harbor animus against her *in particular* and therefore treated her arbitrarily." (emphasis in original)). A plaintiff "must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citation omitted).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). "Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects." *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)). Here, Plaintiff's equal protection claim is wholly conclusory. He fails to allege any facts suggesting that he was treated disparately from similarly situated inmates in any respect. Plaintiff's Fourteenth Amendment equal protection claims against Defendants Johnson and P.A. Mary will be dismissed.

### 3. Civil Conspiracy Claims

Plaintiff suggests that Defendants "knew and conspired to mislead the true 'chain of command' to keep Plaintiff from receiving substantial food [and] diabetic snack[s]." (ECF No. 6, PageID.23.) The Court has construed Plaintiff's complaint to assert civil conspiracy claims against Defendants.

A civil conspiracy under Section 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 566 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a

"possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff provides no factual allegations regarding any agreement between Defendants with the objective to violate Plaintiff's constitutional rights, other than the fact that they are all employed at the BCJ and that Defendant Obrian indicated that he would speak to Defendant Johnson regarding Plaintiff's concerns. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Accordingly, Plaintiff's conspiracy claim under Section 1983 will be dismissed.

## Conclusion

For the reasons discussed above, the Court will deny Plaintiff's motion to appoint counsel (ECF No. 4). Moreover, having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Bailey and Obrian will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against Defendants Johnson and P.A. Mary: (1) Plaintiff's official capacity claims; (2) Plaintiff's Eighth Amendment claims; (3) Plaintiff's Fourteenth Amendment equal protection claim; and (4) Plaintiff's civil conspiracy claims. Plaintiff's Fourteenth Amendment due process claim against Defendant Johnson premised upon her refusal to adhere to Plaintiff's medical diet for his diabetic needs, as well as his Fourteenth Amendment due process claim against Defendant P.A. Mary premised upon her refusal to take action to ensure that Plaintiff received an adequate diet for his diabetic needs, remain in the case.

An order consistent with this opinion will be entered.


Dated: May 23, 2023            /s/ Sally J. Berens
                               SALLY J. BERENS
                               United States Magistrate Judge